Joyce Schiffer-Miller Thank you. May it please the court, counsel, good morning. I'm Joyce Schiffer-Miller. I represent former trooper Todd Steckelberg in this action, which comes before you on the grant of a motion to dismiss, a finding that my 95-paragraph complaint failed to state a claim upon which any relief could be granted in this case. The evidence, or I'm sorry, the factual allegations in this case are that Trooper Steckelberg is a 25-year veteran of the Nebraska State Patrol at the time that this occurs. He is the only trooper that is working across the entire state of Nebraska late at night, one night, or in the early morning hours when he tries to initiate a traffic stop and the person that he's trying to stop was being uncooperative. And so he called a pursuit and he called in to his dispatch and let them know a pursuit was going to occur. As a result of a pursuit, there's a pursuit critique that occurs any time there's a pursuit. And when the pursuit critique, under the policies and procedures of the Nebraska State Patrol, it's assigned out to a sergeant or a command staff of some sort to do the pursuit critique. The initial pursuit critique in this case found that Trooper Steckelberg did not do what is called a TVI, a vehicular move to try to knock a car out of, to stop the pursuit. That was the initial finding in the case. And after the person had done the pursuit critique, then he was pressured to change his findings that there was not any violation of practice or policies in the case. And so as a result of that, he did. There were changes made and they found that he violated a rule or policy. As a result of that occurring, Trooper Steckelberg began filing a grievance, which is what one does when they believe that there's been a violation of policy. And what then occurred is the Nebraska State Patrol would take his grievances that he was filing. In circumstances, they'd wide out. They would change what, like the original pursuit critique, for example. They changed the outcome of that. They widened it out and would not give him a copy of the original document, which led to the grievances that occurred in this case. We submit that when you look at the record as a whole in this case, that Trooper Steckelberg does have causes of action under the various allegations that we've brought forth. I would note it took the court two years to finally come to a final judgment on this case so that we could file an appeal. The first claim that we believe applies is that there is a 14th Amendment procedural due process claim. And what we're saying is that as a result of the widening out, the changing of evidence, the pressuring of people, that Trooper Steckelberg was not given a fair arbitration proceeding in this case. Now, what is the property interest at stake here? The property interest at stake is Trooper Steckelberg's job. Now, he's kept his job at all relevant times, right? That is true. So tell me. His job became so uncomfortable that as it now sits, he's no longer in that job. But he did keep his job, but he was suspended for a day or two or given some sort of mark on his job. And in addition to that, he's applied for other positions and he's been denied those positions. But he won with the arbitrator. Yes. And part of the arbitrator, or maybe the best way to ask it, didn't the arbitrator's decision make him whole in regard to his employment? Well, I believe what we alleged in the complaint is that he won for the most part with the arbitrator. I think that there was some finding that some of their—I believe that ultimately that he was found to, on the pursuit, that they found that he did violate rules in the pursuit. So in that circumstance, he didn't really win. But as far as losing actual money, I'm not sure that that's the whole issue with that. But that's the first part of it. And I do submit to you that the harassment that he endured after that is something—he had a hostile work environment that he was in after that. People would not speak to him. His command staff wouldn't speak to him, really. And the other troopers that he worked with felt uneasy to spend time with him or have the collegiality that we enjoy in a workplace. And so I believe that that doesn't apply. Do you think you're—I think you make a claim based on an interest in reputation. Do you make such a claim? I do make such a claim. But that reputation claim is much different. That reputation claim goes to the fact that even at the final arbitration hearing, they tried to brand Trooper Steckelberg as a non—that he was not believable or he testified falsely at the arbitration hearing. And the arbitrator said that's not true. And after that and after the filing of this lawsuit, they brought an internal affairs investigation where they said you testified falsely at your arbitration hearing and tried to giglio Trooper Steckelberg, which would make him unable to really work in law enforcement because, you know, a man's word as a trooper is his bond. I mean, that's—defense attorneys would know that he'd been found unbelievable. Don't we have case law that appears to indicate that those statements have to be made publicly to affect reputation? And if they're all within an organization, that doesn't count? And especially here where he wins? Judge, I disagree with you. And first of all, let me point out that he did not win from the internal affairs investigation because what Colonel Rice did with the internal affairs investigation is he buried it and said we're going to allege that you are dishonest. And you're not going to have a hearing on this until the civil action is finished. And so he has a cloud over him of the fact that he has been alleged to be dishonest. And I would submit to you that if you have a trooper that is alleged to have been dishonest, you really ought to be giving that out to defense attorneys such as myself when I'm criminally defending someone. It would be helpful to know that this person is dishonest and probably Brady materials. So you don't think you'd need a finding of dishonesty versus just an allegation? You think that an allegation internally would be discoverable in a criminal case? I would submit that it should be. I'm not sure I ever got one of those. Maybe I should go back and look at some of those files. That's probably true. I never got one of those myself. But I would submit that that was what they were going for. And they put the matter in abeyance and did not allow him to go forward and clear his name of the allegation, again, that he was dishonest. Wait, doesn't the arbitration and the hearing and everything going on, doesn't that allow him a sufficient way to clear his name? No, Judge. What I'm telling you is, yes, there was, and he was cleared in the arbitration. But after the arbitration, they went back and did a new internal affairs allegation saying, you lied during your arbitration. Even after that, a finding had been made that the arbitrator was saying, I'm not finding him to be dishonest. Then they tried to bring it up again. And how many times must he defend himself? How many times does he have to do that? Should they not either appeal the arbitration finding or live with it instead of bringing a new? The loss that you allege he suffered as a result of the internal affairs complaint is potential injury to his credibility? Correct. At a subsequent, in a subsequent, his credibility as a witness in subsequent criminal proceedings involving other people? He's alleged by the Colonel of the Nebraska State Patrol to be dishonest as we sit here today. So is there a case? Do you have a case that tells us that that is a, that that kind of potential harm, if it is, if it could come about, that that would support, that would be an injury that would support this kind of a constitutional claim? There are plenty of cases to say that branding someone as dishonest. I think your question is, is does that brand him dishonest? Since they've made the allegation and he's not allowed to. My question is, I'm asking for a case that, that, that is similar to this situation that we could, that we could read that would support your, this particular aspect of your, of your complaint. Well, cases are, there are a number of cases that say if you've branded someone to be dishonest that in the process of an employment matter that you should give them a due process hearing to, to get that off of you. Yes. I mean, that's a number of cases that are. What would be, what would, what's your best case? Well, Paul versus Davis, for example, the Seminole case about where liberty interest comes up in employment cases. And then moving on. You're under rebuttal, counsel, so you know. Oh, okay. Yes. Then I'll, I will save the rest as far as my religious discrimination claim and also my First Amendment claim for rebuttal. Thank you. Sure. Mr. Lopez. Thank you, Judge Benton, and may it please the court. I want to begin, before I address several of the aspects of my friend's argument, with the, where we began in our, in our case summary. And that's quoting the district court's paraphrasing of the Supreme Court's decision in Garnieri. In the first, this is at JA81, observing that what the plaintiff has alleged here is precisely the sort of everyday employment dispute that the Supreme Court has held, has explained lacks constitutional significance. That wasn't a government employment case, was it, that the Supreme Court said that in? Was it a government employment case?  Yeah, that's what I thought. The government's different, so proceed with an argument. Correct. And the significance of Garnieri is, and I think there's some relevance here, is in that with, you can't transform a speech, you can't sort of avoid the public concern requirements of a free speech retaliation case by dressing it as a petition claim. And I think the plaintiff does do so at times in this case. But the main argument that I want to address today is just pointing out that in two careful, thorough, and comprehensive opinions, Judge Girard here reached the right conclusion, which is after stepping through each of the plaintiff's several claims, and he's alleged several under a variety of different provisions, he has failed to allege sufficient facts. I'd like to start, not where we were in the first round of argument, but the establishment claim. As I understand the assertion in the complaint is that he was asked to ride with the chaplain on a ride-along. Why isn't that enough? Why can't you make an inference that the reason that you would be riding along with a chaplain would be for religious-based reasons? Well, you'd have to create a rule that says that basically any kind of interaction with a chaplain is a per se violation of the Establishment Clause. And I think that would conflict with the precedents of this court and the Supreme Court that say that, and this is what Judge Girard cited, that to make a showing on an Establishment Clause violation, there has to be some kind of showing of coercion. So you don't think that the complaint sufficiently alleges a requirement that he ride along? Is that what you're saying? Well, Judge Kelly, I think you have to analyze the coercion not at that point, but rather on the actual interaction between Trooper Steckelberg, now Mr. Steckelberg, and the chaplain himself. So you think it's not just the requirement that you be with the chaplain on a ride-along, which is sort of unusual, I think you could infer, that the chaplain's not always on a ride-along. I don't know that this record could suggest that. I mean, I understand the point. I don't think that the plaintiff has alleged anything that this court could sort of make, could draw out that inference from what he has pled. So you think that the complaint would have to allege what actually happened with the chaplain? It can't just be that you are required to spend time in a trooper car on a ride-along for the evening with the chaplain? Without anything else, correct. I mean, to play out a hypothetical that is not in the record, and is not even one that I addressed in my brief. But on those facts, you could potentially say that if the colonel had decided that he wanted a new chaplain as part of their sort of introduction to the law enforcement agency that he or she is now working for, to see how cops do their job and go and do a ride-along. And it would be required that the officer have a religiously ordained chaplain with him in the car for a few hours. So the complaint, as it reads, it's a reasonable inference, or equally reasonable inference, is that it was for the benefit of the chaplain as much as it was for the benefit of the- I don't mean to inject my hypothetical into their facts at all. I'm just saying that I think I don't see a legal distinction between those two scenarios. And here, as Judge Girard said and concluded, there just hasn't been any allegation whatsoever of any kind of proselytizing of anything other than the fact that Father Tomlinson was just sitting in the car with him. So I think to draw from that that there's been a viable allegation of an establishment clause violation would be somewhat inconsistent with how this court and the Supreme Court have cabined what needs to be alleged for a claim like that to get over the starting line. Does the complaint allege or infer how long the period of time was? I know it was for a shift, Judge Benton, and I'm not sure- An eight hour, was that probably the inference? Eight or twelve hours, something like that? I, forgive me, I'm- But it does say first shift. First shift, yes. So we do have some time frame. Yes, yes, yes. But again, that is shorn of any allegation of proselytizing, any allegation of what they were doing. In fact, and that comes, and this is sort of a broader point about the viability of the rest of Mr. Steckelberg's claims, that comes not just on a dismissal of the first complaint, but after Judge Girard granted Trooper Steckelberg an opportunity to amend the pleadings and address the factual deficiencies that Judge Girard, I think very comprehensively in his March 31st, 2016 order, set out. And still, the second amended complaint lacked the kind of factual allegations that would have been necessary to create some viability on that claim. I will turn briefly to the procedural due process and reputational harm arguments, unless Judge Kelly, you had any other questions on the establishment claim. Just a couple points regarding Ms. Schiffer-Miller's arguments. On the procedural due process claim, her claim appears today at argument to be, now again, that the grievance process was deficient in such a way that it violated Mr. Steckelberg's procedural due process rights under the 14th Amendment. Except that, as Judge Girard found not once but twice, the grievance proceedings appear to have been decided in his favor. Now, he has- Now, what about her point that some of it wasn't? Now, help me with that, because I was just assuming, like Judge Girard, that he really won that. Go ahead. Well, I don't know that that's what- I think, in fairness to Ms. Schiffer-Miller, I think she's alleging two different sort of proceedings that were initiated against Trooper Steckelberg. The first is the arbitration proceeding based on the first series of grievances regarding the first TVI. Those concluded, as Judge Girard said, in his favor. I mean, there's no allegation in the complaint that any aspect of that deprived him of any interest. He wasn't fired. In fact, and I think this is important to note because I rechecked the complaint while I was sitting during my friend's argument. She made a point that he was possibly suspended. Unless I'm missing something, I don't think that was an allegation that was in the second amended complaint. So there was no deprivation of Trooper Steckelberg at all following the first arbitration process. And then, as he has alleged, there was an initiation of an internal affairs complaint by the colonel against Trooper Steckelberg regarding a finding of dishonesty. That predated this case, which was originally filed in state court. And then Trooper Steckelberg had initiated a series of litigation, another one in the Nebraska Commission on Industrial Relations. And at the same time, this case was picking up steam and was removed to federal court by us, the colonel, as he has alleged, placed the case in abeyance. End of story. That's it. There's no there. It's it's it's kind of inchoate what he's alleging from a factual standpoint, because there was still an abeyance. Right. Well, frankly, your honor, this is this is admittedly off the record beyond the record. But Colonel Rice no longer works for the patrol and Trooper Steckelberg. That's in your briefs. Yeah, right. And so I, I guess. Yes. With the caveat that I don't know how it could go anywhere from here because they're both they're both gone. Trooper Steckelberg is defunct or moot, sort of correct. And admittedly, we have not filed a suggestion of mootness on that because there are other claims that would not necessarily been mooted by that. I've not looked at the record in this case. We are in federal court. I know it was a motion to dismiss, but we don't have like the arbiter arbitrators decision or those sorts of things anywhere in our papers. Right. And they weren't before the district court. Right. Not before the district court. Were there ancillary papers referred to in the complaint that did get before the district court? If you know what I'm referring to, you know, sometimes when they're referred to in the complaint, they get in during this motion dismiss process in federal court. I don't believe so. You're right. Thank you. The judge Gerard did it, did a careful and comprehensive job of keeping his analysis within the four corners of what Miss Schiffer Miller, on behalf of Mr. Steckelberg, actually filed and and on for all of those points under the First Amendment Establishment Clause claim. I'm sorry. Before I move on to that very briefly, I do want to address the reputational argument that the court visited with Miss Schiffer Miller. There are not cases that say in this context that a reputational harm as a due process violation under the 14th Amendment is viable. In fact, this court's this court's precedents say the opposite. If you look at the Jones versus McNeese case, that case involved e-mails regarding a substance abuse counselor for the Nebraska Department of Corrections to other state agencies saying that the counselor had engaged in unethical conduct, and that was not enough. There was other evidence involved in that case. It wasn't going to be admissible, so it wasn't eligible to support the claim. But within that case, and if the court will forgive me, I'm not able to recall the names of the cases off the top of my head, but there were two of them that are contained and summarized in Jones. One of them was a was a public a publication of an allegation of firefighter misconduct. Another one was a public a publication of a teacher by a school district of a teacher having engaged in child abuse. Those are the kinds of things that have been recognized by this court as being enough from a factual allocation standpoint or from having happened standpoint to support a 14th Amendment reputational due process harm claim. This case, frankly, just does not come anywhere close to reaching that threshold. And again, if his claim is that the reputational harm is as a result of this inchoate internal affairs proceeding, and I think we've discussed this at length already, but that simply is not enough. I will conclude where I understand Ms. Sheffert-Miller is going to begin in her rebuttal, which is on the Establishment Clause claim, and again, indicate that under Jackson versus Nixon, there has to be some showing of coercion. There simply was not here. This court's precedents, certainly the ones that have been that have found their way into this briefing and in Judge Girard's two orders, do not stand for the proposition that simple, sort of nothing additionally alleged involvement and exposure to a chaplain who may have as a component of his or her duties for a governmental organization some religious duty, some religious obligation. Without more, there's not a per se obligation. So I think Ms. Sheffert-Miller is asking you to tread ground that this court is not gone. Cognizant of the court's time, I will spare you any other aspect of our argument, but I'm happy to answer any other questions the court has. With that, we would ask you to affirm these properly decided dismissal orders. Thank you. Thank you for your argument. Ms. Sheffert-Miller. Thank you. To address the coercion aspect, Mr. Steckelberg, Trooper Steckelberg, was given a work improvement plan, and it had five or six different terms to it, and one of them is to go on a ride-along with the chaplain, and that is coercion. So he was required by his supervisor to do that, and I think that that is coercion, and that's a violation of the Establishment Clause. So in your view, the coercion is just being in the presence of the chaplain. Do you think that that's sufficient to get past the 12B-6? Being required to be in the presence of the chaplain, yes. And I would also say that in our allegations, we note the fact that when Colonel Rice was in Norfolk, he was in trouble for proselytizing, so he had a history of that. I mean, I think it is misconstrued. Do you see how long ago it was? Do you see the time difference between when he was in Norfolk? It was some time ago. It was 2008, I think. Thank you. So I think that there is at least an inference, and they should defend by filing an answer in the case and saying, oh, it was wholly not a religious purpose that we told him to go on a ride-along with the chaplain. I mean, there's no other purpose for him to go on the ride-along with the chaplain. In fact, it's alleged in our complaint that he asked the chaplain, why are we here, and the chaplain couldn't tell him. So I don't think that the chaplain has to say the rosary when he's in the car with him. You've got to go on a ride-along with the chaplain. Do you have a case for that, for the proposition that merely being in the presence of clergy or someone who is at least a part-time clergyman would be coercion and would be violation of the establishment clause? Being coerced. What's your case?  Judge, there are a number of cases where it talks about even AA meetings have sometimes been held because that's a God thing. So in my religious section, it cites a number of cases where you're coerced to be with. I mean, I don't think it. And so when we read the cases, there's going to be a case that merely being the presence in the workplace is enough. And then the final thing that I wanted to comment on is we have a freedom of speech and a freedom of association case here that we've wholly overlooked in our argument this morning, and I think it's clear that when Trooper Stackelberg applies for an executive protection position that would have paid him $20,000 to $25,000 more a year, and Colonel Rice makes the comment that he needs to, his comment was something to the effect of, we don't want him moving his mouth around the governor. And that's a quote in my complaint. That is what was said, and maybe Colonel Rice will come and say he didn't say that, but that is a First Amendment claim, and I don't see how we do not survive a motion to dismiss on the First Amendment claim when there's clear adverse action that he was deprived of that position. I also believe that the hostile work environment claim is throughout this case and that we are entitled to at least do discovery and proceed. Thank you. Thank you very much for the argument. Case 17-1823, Stackelberg v. Rice, is submitted for decision.